614 P.2d 425

**IDAH–BEST, INC., Plaintiff-Appellant,**

v.

**FIRST SECURITY BANK OF IDAHO, N. A., HAILEY BRANCH, Defendant-Respondent.**

**No. 13271.**

Supreme Court of Idaho.

July 28, 1980.

Paul M. Beeks of Smith & Beeks, Twin Falls, for plaintiff-appellant.

Thomas N. Ambrose and Richard E. Hall of Moffatt, Thomas, Barrett & Blanton, Boise, for defendant-respondent.

McFADDEN, Justice.

Plaintiff-appellant Idah-Best, Inc., brought this action to hold defendant-respondent First Security Bank of Idaho, N.A., Hailey Branch accountable for a check drawn by one of its customers and returned to the payee by the Hailey branch for insufficient funds. An earlier appeal of this case resulted in a remand. *See Idah-Best v. First Security Bank of Idaho N.A., Hailey Branch*, 99 Idaho 517, 584 P.2d 1242 (1978) (*Idah-Best I*). On remand the district court granted First Security's motion for summary judgment and Idah-Best appeals.

The facts in this case are set out and discussed with considerable particularity in *Idah-Best I*, at 99 Idaho 520–22, 584 P.2d at 1245–47. On Friday, October 31, 1975 Idah-Best received a check from Wesley C. Prouty in the amount of $30,000, drawn on his account at First Security Bank, Hailey branch. Idah-Best deposited the check in its account at Twin Falls Bank & Trust Company on the same day. On Monday, November 3, 1975, after the intervening weekend, the check was sent by Twin Falls

Bank & Trust to First Security Bank's Boise branch computer center, where it was received on Tuesday, November 4, 1975. During the evening and morning hours of November 4–5, 1975, the computer center operators at terminals in Boise entered information concerning the check into First Security Bank's central computer in Salt Lake City provisionally crediting the Twin Falls Bank & Trust Company account. By adjustments made to the "Office Clearings Account," the computer center also provisionally transferred the check to the books of the Hailey branch. The office clearings account is an interbranch account used to clear transactions between the Hailey and Boise branches. The Utah computer reflected that the Prouty account in the Hailey branch had insufficient funds to cover the check, and indicated this on its printout.

The check was delivered to the Hailey branch on Wednesday, November 5, 1975, arriving through the regular bank courier between noon and 1:00 p. m. On Thursday, November 6, 1975, the Hailey branch, after receiving the computer printout from Utah, dishonored the check and returned it to the computer center for credit. The center received the return check on November 7, 1975, and returned it to the Twin Falls Bank & Trust which in turn delivered it to Idah-Best.

I.C. § 28–4–302 (U.C.C. § 4–302) fixes a time limit after presentment for banks to handle items, including checks. In particular, checks must be "settled for" by midnight of the day on which they are presented on and received by the payor bank. In the first appeal of this case the court held that the receipt by the Bank's computer center in Boise did not amount to "presentment." This court held presentment occurred only when the check was physically delivered to the branch bank at Hailey, the payor bank. The court then remanded for a determination of what constituted "settlement," and whether this had occurred within the time limits specified by I.C. § 28–4–302, i. e. by midnight of the day of receipt. On remand, the district court held that settlement had been timely effected, and granted respondent Bank's motion for sum-mary judgment. It is the conclusion of the court that under the pertinent statutory provisions entries made to the interbranch office clearings account between the Boise and Hailey branches amounted to "provisional settlement," and that this occurred before midnight of the day of the Hailey branch's receipt of the check, thus we affirm.

I.C. § 28–4–302(a) reads as follows:

"28–4–302. Payor bank's responsibility for late return of item.—In the absence of a valid defense such as breach of a presentment warranty (subsection (1) of section 28–4–207), settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of

    (a) a demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline . . . ."

I.C. § 28–4–302 thus contains two deadlines, one for settlement, and one for the decision to pay, return or send notice of dishonor of a check. Settlement must take place by midnight of the day of presentment and receipt. Payment, return or sending of notice of dishonor, on the other hand, must take place by the bank's "midnight deadline," which is defined in I.C. § 28–4–104(h) as midnight of the first banking day following the day of presentment and receipt. We decided in *Idah-Best I* that presentment in this case occurred when the check was delivered in Hailey on November 5, 1975. Under that construction the Bank's "midnight deadline" was midnight on November 6, 1975, and since it dishonored the check sometime during the day of November 6, it met its midnight deadline for dishonor. The remaining question is whether it settled for the check before midnight on November 5, 1975, the day of presentment and receipt.

The term "settle" is defined in I.C. § 28–4–104(j):

"(j) 'Settle' means to pay in cash, by clearing house settlement, in a charge or credit or by remittance, or otherwise as instructed. A settlement may be either provisional or final . . . ."

The term originates with Article 4 of the Uniform Commercial Code, and has not been subject to extensive judicial consideration. The most complete amplification on the Code's definition is in Official Comment 6 of U.C.C. Commission, following I.C. § 28–4–104, which reads as follows:

"6. Subsection (1)(j): The term 'settle' is a new term in bank collection language that has substantial importance throughout Article [Chapter] 4. In the American Bankers Association Bank Collection Code, in deferred posting statutes, in Federal Reserve regulations and operating letters, in clearing house rules, in agreements between banks and customers and in legends on deposit tickets and collection letters, there is repeated reference to 'conditional' or 'provisional' credits or payments. Tied in with this concept of credits or payments being in some way tentative, has been a related but somewhat different problem as to when an item is 'paid' or 'finally paid' either to determine the relative priority of the item as against attachments, stop payment orders and the like or in insolvency situations. There has been extensive litigation in the various states on these problems. To a substantial extent the confusion, the litigation and even the resulting court decisions fail to take into account that in the collection process some debits or credits are provisional or tentative and others are final and that very many debits or credits are provisional or tentative for awhile but later become final. Similarly, some cases fail to recognize that within a single bank, particularly a payor bank, each item goes through a series of processes and that in a payor bank most of these processes are preliminary to the basic act of payment or 'final payment.'

"The term 'settle' is used as a convenient term to characterize a broad variety of conditional, provisional, tentative and also final payments of items. Such a comprehensive term is needed because it is frequently difficult or unnecessary to determine whether a particular action is tentative or final or when a particular credit shifts from the tentative class to the final class. Therefore, its use throughout the Article [Chapter] indicates that in that particular context it is unnecessary or unwise to determine whether the debit or the credit or the payment is tentative or final. However, when qualified by the adjective 'provisional' its tentative nature is intended, and when qualified by the adjective 'final' its permanent nature is intended.

"Examples of the various types of settlement contemplated by the term include payments in cash; the efficient but somewhat complicated process of payment through the adjustment and offsetting of balances through clearing houses; *debit or credit entries in accounts between banks*; the forwarding of various types of remittance instruments, sometimes to cover a particular item but more frequently to cover an entire group of items received on a particular day." (Emphasis added.)

In the light of the specific language of Official Comment 6, the failure of I.C. § 28–4–302(a) to specify final or provisional settlement indicates that either will suffice to effect "settlement" under that section.

The decision finally to pay an item, as we noted in *Idah-Best I*, is a matter of judgment and involves determining whether the account has sufficient funds to cover the check, is subject to an attachment or stop payment order and other such matters. This "decision," to make payment or to dishonor must be made by the midnight deadline.

Provisional settlement, on the other hand, is a much more perfunctory matter. It may take the form, as noted in Comment 6, of "debit or credit entries in accounts between banks." A check's progress from the maker to the payor bank (when the payor bank is

not also the depositary bank, I.C. § 28–4–105(a)) usually involves a number of provisional settlements. For example, when Twin Falls Bank and Trust forwarded the Prouty check to First Security's Boise branch, it received a credit to its account with First Security. This credit was provisional, subject to the Hailey branch's ultimate determination to pay or dishonor the check. The collection process may involve numerous "intermediary" banks, I.C. § 28–4–105(c), each making provisional settlement as the check passes through its books. The entry of these provisional debits and credits occurs as soon as the deposit or transfer is "proven," that is, verified for typographical errors or mistakes in addition and subtraction, but before the more complex decision whether finally to pay the check is made by the payor bank.

The record reflects that just such a provisional settlement was made in this case. As we indicate above, the deadline for provisional settlement was midnight on November 5, 1975. The deposition of First Security's vice-president for operations is before this court and his uncontradicted testimony is that sometime early on November 5, 1975, the computer center transferred the check onto the Hailey branch's books. He testified specifically, that by midnight on November 5, 1975,

> "[t]he item, the $30,000 item would be out of Boise's totals, so to speak, and into Hailey's via the interoffice—the office clearings account, so it would be, then, residing in the Hailey branch totals."

By no means can this entry be said to constitute "final payment," since at the time it was made the Hailey officers were not even aware of the check's existence. The credit was instead provisional, pending the decision on the Hailey branch's part whether to pay or dishonor the check, which could be made only after presentment and reception.

Idah-Best argues that such a result is inconsistent with *Idah-Best I*, in which we held that "presentment" did not occur until the check physically reached the Hailey branch. Idah-Best argues that it is impossible to "settle" for a check which has not been presented and received. The nature and purposes of "settlement," however, demand that we reject this argument.

In the years after World War II, banks experienced a dramatic increase in customers' use of check services. This increase came against the backdrop of the common law rule which held banks liable for demand items such as checks, which they retained for more than twenty-four hours without taking final action either to pay or dishonor. Banks thus felt the need to post each check or group of checks as it arrived, making the decision whether to pay immediately. At some times of the day clerks would be idle, at other times swamped by incoming checks. Because of the inefficiency and employee turnover this occasioned, the American Banking Association ultimately drafted the Model Deferred Posting Statute. All states enacted the statute or a close variation. Bailey, Brady on Bank Checks §§ 14.18–14.19 (1979).

Deferred posting has been described as a "settle now, pay later" system. Leary, Check Handling Under the Uniform Commercial Code, 49 Marquette L.Rev. 331 (1965). Under deferred posting, preserved in the Uniform Commercial Code in I.C. § 28–4–301, the bank immediately makes the provisional settlement we have discussed above, but may defer its decision whether to pay the check until midnight of the next banking day after receipt. Under this system, checks accumulated on Monday, for example, are processed on Tuesday, so that clerks may complete the process of posting by working steadily throughout the day. This streamlines the bank's posting process while delaying final payment (or dishonor) only slightly.

The rather perfunctory provisional settlement helps to assure the speedy and orderly handling of checks by provisionally shifting credit for a check immediately. I.C. § 28–4–302(a) states a deadline *before which* this action must be taken. It does *not* state that settlement may not take place before receipt. We see no reason in logic or in the nature of the settlement process which re-

quires us to hold that settlement must await presentment.

It is true that settlement normally is effected by some affirmative action on the part of the receiving bank. But we are not the first court to hold that prior arrangements may have the same effect as such affirmative action. In *Universal C.I.T. Credit Corp. v. Farmers Bank of Portageville*, 358 F.Supp. 317 (E.D.Mo.1973), the settling bank had a prior agreement with its area Federal Reserve Bank, by which it was required to take no formal action to effect settlement other than complaining by midnight of the day of receipt of items it considered unacceptable. Despite the absence of formal action, the court found the agreement with the Federal Reserve Bank to be the "functional equivalent" of settlement. In the instant case, an officer of First Security Bank testified on deposition that the entry to the office clearings account was "our method of provisional settlement between Boise and the Hailey office . . .." Given the nature of the relationship between the Boise branch and the Hailey branch, the absence of a formal written agreement does not diminish the effectiveness of the entry to the office clearings account in effecting settlement.

The judgment of the district court is affirmed. Costs to respondent, but no attorney fees are allowed on appeal.

DONALDSON, C. J., BAKES and BISTLINE, JJ., and DUNLAP, J. Pro Tem., concur.