VAN SENUS AUTO PARTS, INC v MICHIGAN NATIONAL BANK,
WYOMING

Docket No. 55512. Submitted March 2, 1982, at Grand Rapids.—
Decided May 19, 1982.

Stephen Hassell purchased automobile parts from Van Senus
Auto Parts, Inc. Hassell paid Van Senus with checks drawn on
various Michigan banks, including 16 checks drawn on Michigan National Bank, Wyoming, which were returned unpaid for
insufficient funds. Several of the checks were redeposited and
again returned for insufficient funds or because the account on
which the checks had been drawn was closed. Van Senus filed
suit in Kent Circuit Court against Hassell, Michigan National
Bank, Wyoming, Old Kent Bank & Trust Company, Hackley
Bank, and Muskegon Bank & Trust Company. The court,
George R. Cook, J., entered judgment for the plaintiff against
defendant Hassell but entered judgments of no cause of action
for the remaining defendants. The plaintiff appeals the judgment entered for defendant Michigan National Bank, Wyoming
alleging that: (1) Michigan National Bank, Wyoming did not
return any of the 16 checks to the Federal Reserve Bank before
midnight of the day following its receipt of the checks and that
the bank is therefore accountable to the plaintiff in the
amounts of the checks; (2) the defendant failed to "settle for"
the 16 checks before midnight of the day the checks were
received by the defendant; (3) the defendant bank is accountable to the plaintiff for the amount of 7 of the checks because
the defendant made "final payment" by completing its process
of posting each of these checks; and (4) the trial court erred in
denying the plaintiff's motion for assessment against the defen-

REFERENCES FOR POINTS IN HEADNOTES
[1] 10 Am Jur 2d, Banks and Banking §§ 701, 704, 736.
[2-4] 10 Am Jur 2d, Banks and Banking § 543.
[5] 23 Am Jur 2d, Depositions and Discovery § 48.
Construction and effect of Rules 30(b), (d), 31(d), of Federal Rules of
Civil Procedure and similar state statutes and rules, relating to
preventing, limiting, or terminating the taking of depositions. 94
ALR2d 1172.
[6] 23 Am Jur 2d, Depositions and Discovery § 256.

dant bank of costs incurred by the plaintiff in connection with the deposition of an employee of the Federal Reserve Bank in Detroit. *Held:*

1. The plaintiff did not prove that the ordinary process followed by the defendant bank was inadequate to insure compliance with the midnight deadline. Nor did the trial court err in finding that the plaintiff did not sustain its burden of proving that the 16 checks were not processed in accord with ordinary procedures. The plaintiff did not prove that the midnight deadline was violated as to any of the 16 checks.

2. The Court of Appeals rejects the plaintiff's assertion that the midnight "settlement" cut-off was violated because the plaintiff presented no evidence that provisional credit was not given by the adjusting of balances through the Federal Reserve Bank, which acted as the clearing house.

3. The trial court did not err in finding that the seven "paid" stamps were simply an error and that the process of posting was never completed on those checks. The process of posting involves more than just certain mechanical steps. Posting involves both the subjective decision of the bank to pay the item and the mechanical steps necessary to register that decision. There was ample evidentiary support for the conclusion that the "paid" stamps were affixed erroneously when the return items were microfilmed.

4. The trial court erred in denying the plaintiff's request for assessment of the costs involved in deposing the employee of the Federal Reserve Bank. The defendant bank should be assessed for costs and expenses reasonably incurred by the plaintiff in deposing the employee.

Affirmed in part and reversed in part.

1. BANKS AND BANKING — CHECKS — MIDNIGHT DEADLINE.

A payor bank is accountable to a payee for the full amount of a check retained beyond its midnight deadline whether the check is properly payable or not; the imposition of this strict liability is due to the great importance of speed in the collection process; a payee claiming a payor bank's violation of the midnight deadline bears the burden of proving such violation (MCL 440.4104[1][h], 440.4302[a]; MSA 19.4104[1][h], 19.4302[a]).

2. BANKS AND BANKING — SETTLEMENT.

Pursuant to the law of negotiable instruments, "to settle" means to pay in cash by clearing house settlement in a charge or credit or by remittance or otherwise as instructed; a settlement

may be either provisional or final (MCL 440.4104[1][j]; MSA 19.4104[1][j]).

3. BANKS AND BANKING — FINAL PAYMENTS — POSTING.

A payor bank is accountable for the amount of a check after final payment of the check; while completion of the process of posting is one method by which a bank renders itself accountable for the amount of an item, the process involves both the subjective decision of the bank to pay the item and the mechanical steps necessary to register that decision.

4. BANKS AND BANKING — POSTING.

The process of posting by a payor bank properly includes the power to correct or reverse an entry or erroneous action with respect to the item (MCL 440.4109(e); MSA 19.4109[e]).

5. PRETRIAL PROCEDURE — DEPOSITIONS — COURT RULES.

The Michigan court rules provide that persons taking depositions shall be permitted to examine the deponent regarding any unprivileged, admissible, relevant matter; upon motion seasonably made by either party or by the person to be examined and upon reasonable notice and good cause shown, the court may order that the scope of the examination shall be limited to certain matters (GCR 1963, 302.2[1], 306.2).

6. JUDGES — DISCOVERY — COURT RULES.

A trial judge has the power to impose just sanctions for a party's failure to comply with an order for discovery, including the assessing of expenses against the guilty party (GCR 1963, 313.1, 306.7[2]).

*Visser & Bolhouse,* for plaintiff.

*James Booth Burr, Jr.,* for defendant.

Before: D. F. WALSH, P.J., and CYNAR and W. F. HOOD,* JJ.

D. F. WALSH, P.J. Plaintiff, Van Senus Auto Parts, Inc., filed a complaint against several defendants in July, 1979. This appeal concerns the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

December, 1980, entry of judgment against plaintiff in favor of defendant, Michigan National Bank, Wyoming.

The controversy originated when plaintiff received payment from S. L. Hassell Sales, Inc., for auto parts supplied to Hassell by plaintiff. Payment was in the form of checks drawn on various Michigan banks. The 16 checks involved in this appeal were drawn on defendant Michigan National Bank, Wyoming. At various times, plaintiff deposited these checks into its Calumet National Bank of Indiana account. All 16 checks were returned unpaid for insufficient funds. Several of the checks were redeposited and again returned for insufficient funds or because the account on which the checks had been drawn was closed. Judgment was entered in plaintiff's favor against Hassell in May, 1980. Hassell had been adjudicated bankrupt on June 30, 1978. Plaintiff's claims against defendant Michigan National Bank, Wyoming (hereinafter defendant or defendant bank) are based on various provisions of the Uniform Commericial Code. MCL 440.1101 *et seq.;* MSA 19.1101 *et seq.* Specifically, plaintiff claims that defendant bank is accountable to plaintiff in the amount of all of the 16 checks because of defendant's failure to meet its statutorily prescribed deadlines for settlement and return of the checks, MCL 440.4302(a); MSA 19.4302(a), and that defendant is accountable to plaintiff on 7 of the checks because defendant had completed its posting process on those checks before returning them. MCL 440.4213(1)(c); MSA 19.4213(1)(c). Plaintiff also argues that the trial court erred in denying plaintiff's request that certain deposition expenses incurred by plaintiff be assessed against defendant.

The procedures followed by defendant, at times

relevant to this controversy, in the processing of its checks were as follows:

Checks such as the 16 involved in this case were deposited in payees' banks and shortly thereafter arrived at the Federal Reserve Bank of Chicago-Detroit Branch. Checks received by the Federal Reserve Bank before midnight were processed and dispatched between 4 a.m. and 7 a.m. the next morning. Part of the Federal Reserve Bank processing involved placing an endorsement stamp, bearing the date of dispatch, on the back of each check.

By courier, checks drawn on defendant bank were delivered to Michigan National Bank, Grand Rapids, an affiliate of defendant. In Grand Rapids, the checks were run on proof machines and a balance was struck. Later in that same day (i.e., the day checks were sent from the Federal Reserve Bank to Grand Rapids), the checks were sent to the electronic processing center (EPC) in Lansing operated by Michigan National Bank, Lansing.

The EPC had access to all computer records of the accounts of customers of banks using the EPC services. The checks were sorted by account number and the account balances were assessed. If there was no problem with the account, the checks were charged against it. If the computer indicated that there were insufficient funds in the account to cover a particular check or that the account was closed, the check was listed in an "unposted report" and the check was not debited to the customer's account. The checks, unposted report and other documents were then shipped to the data processing center operated by Michigan National Bank in Plainwell, Michigan. Copies of all reports, including the unposted report, were also delivered to defendant's main office in Wyoming, Michigan.

This occurred by the morning of the day following delivery of the checks from Grand Rapids to the EPC in Lansing.

In Plainwell, the checks listed in the unposted report were separated and taken to the return item department. The remaining checks, those not on the unposted report, were microfilmed, stamped "paid", verified for signature and placed in the individual customer's account folder. Meanwhile, a bank officer at defendant's main office reviewed the unposted report to determine whether any of the checks listed on that report should be paid. If the officer determined that an unposted check was to be paid, the Plainwell center was notified and the check was sent back to the EPC in Lansing for processing, to be returned to Plainwell the following day. The remaining unposted checks were microfilmed, a return item letter was prepared, and the checks and letter were delivered by courier to the EPC by 5 p.m. The items were sent from the EPC to the Federal Reserve Bank in Detroit. The courier left Lansing with the items between 9 p.m. and 10 p.m. and delivered them to the Federal Reserve Bank mail room. Any return items delivered to the Federal Reserve Bank between 9:30 a.m. of one work day (Day X) and 9:30 a.m. of the next work day (Day Y) were stamped with a Federal Reserve Bank cancellation stamp dated Day Y. Return items were eventually returned to the depositary banks—*i.e.,* in this case they were returned to Calumet National Bank of Indiana.

# I

Plaintiff first argues that defendant did not return any of these 16 checks to the Federal Reserve Bank before midnight of the day following defendant's receipts of the checks and that defendant is,

therefore, accountable to plaintiff in the amount of the checks.

MCL 440.4302(a); MSA 19.4302(a) provides:

"In the absence of a valid defense such as breach of a presentment warranty (subsection (1) of section 4207), settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of

"(a) a demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depository bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depository bank, does not pay or return the item or send notice of dishonor until after its midnight deadline; * * *."

"Midnight deadline" is defined in MCL 440.4104(1)(h); MSA 19.4104(1)(h):

" 'Midnight deadline' with respect to a bank is midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later."

Under MCL 440.4302(a); MSA 19.4302(a), a payor bank is accountable to a payee for the full amount of a check retained beyond its midnight deadline whether the check is properly payable or not. *Templeton v First National Bank of Nashville,* 47 Ill App 3d 443; 5 Ill Dec 720; 362 NE2d 33 (1977), *Northwestern National Ins v Midland National Bank,* 96 Wis 2d 155; 292 NW2d 591 (1980). The imposition of strict liability is due to the great importance of speed in the collection process. *Continental National Bank v Sanders,* 581 SW2d 293

(Tex Civ App, 1979). A payee claiming a payor bank's violation of MCL 440.4302(a); MSA 19.4302(a), however, bears the burden of proving such violation. *Conn v Bank of Clarendon Hills,* 53 Ill 2d 33; 289 NE2d 425 (1972), *Go-Tane Service Stations, Inc v Sharp,* 78 Ill App 3d 785; 33 Ill Dec 916; 397 NE2d 249 (1979).

In this case, plaintiff had the burden of proving, as to each of the 16 checks, that defendant failed to return the checks to the Federal Reserve Bank until after midnight of the day following defendant's receipt of the item. The trial court found that plaintiff had not sustained its burden. We agree.

Initially we note that plaintiff did not prove that the ordinary process followed by defendant, as described above, was inadequate to insure compliance with the midnight deadline. All checks were received by the EPC on Day 1 and delivered to the data processing center in Plainwell by Day 2. Dishonored checks were sent back to the Federal Reserve Bank, via the EPC, on Day 2. Contrary to plaintiff's assertion, there was no stipulation by defendant that the checks were returned to the Federal Reserve Bank at 1 a.m. on Day 3. Additionally, there was overwhelming uncontroverted evidence that the date of the Federal Reserve Bank cancellation stamp did not indicate the date of receipt of return items by the Federal Reserve Bank. Rather, items returned to the Federal Reserve Bank by midnight were stamped with the next day's date.

Nor did the trial court err in finding that plaintiff did not sustain its burden of proving that these 16 checks were not processed in accord with the ordinary procedures outlined above. We have closely examined the numerous stamps affixed to each of the 16 checks and have carefully reviewed

the testimony and exhibits. Plaintiff did not prove that the midnight deadline was violated as to any of these checks.

Plaintiff asserts a second violation of MCL 440.4302(a); MSA 19.4302(a), in the alleged failure of defendant to "settle for" the 16 checks before midnight of the day the checks were received by defendant. The trial court did not address this aspect of plaintiff's claim.

"To settle" means "to pay in cash, by clearing house settlement, in a charge or credit or by remittance, or otherwise as instructed. A settlement may be either provisional or final". MCL 440.4104(1)(j); MSA 19.4104(1)(j). See Official UCC Comment, 22 MCLA 487-488, ¶ 6.

In this case plaintiff presented no evidence that provisional credit was not given by the adjusting of balances through the Federal Reserve Bank, which acted as clearing house. We, therefore, reject plaintiff's assertion that the midnight settlement cut-off was violated. See *Idah-Best, Inc v First Security Bank of Idaho,* 101 Idaho 402; 614 P2d 425 (1980) *(Idah-Best II).*

## II

Plaintiff also argues that defendant is accountable to plaintiff for the amount of seven of the checks because defendant made "final payment" by completing its process of posting each of these checks. Specifically and exclusively, plaintiff relies on the "paid" stamps which were placed on the backs of these checks by defendant.

MCL 440.4213(1); MSA 19.4213(1) provides in pertinent part:

"An item is finally paid by a payor bank when the bank has * * *:

* * *

"(c) completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith;

* * *

"Upon a final payment under subparagraphs (b), (c) or (d) the payor bank shall be accountable for the amount of the item."

"Process of posting" is defined in MCL 440.4109; MSA 19.4109:

"The 'process of posting' means the usual procedure followed by a payor bank in determining to pay an item and in recording the payment including 1 or more of the following or other steps as determined by the bank:
"(a) verification of any signature:
"(b) ascertaining that sufficient funds are available;
"(c) affixing a 'paid' or other stamp;
"(d) entering a charge or entry to a customer's account;
"(e) correcting or reversing an entry or erroneous action with respect to the item."

The trial court found that the seven "paid" stamps were "simply an error". The court noted that "paid" stamps were normally placed by defendant on the face of checks whereas each of these appeared on the back. Additionally, the court noted that no account was ever debited to reflect these checks. The court concluded that the process of posting was never completed on these checks. We agree with the trial court.

Under MCL 440.4213(1); MSA 19.4213(1) a payor bank is accountable for the amount of a check after final payment of the check. *North Carolina*

*National Bank v South Carolina National Bank,*
449 F Supp 616 (D SC, 1978), *aff'd* 573 F2d 1305
(CA 4, 1978), *cert den* 439 US 985; 99 S Ct 577; 58
L Ed 2d 657 (1978). Note, *Commercial Law—Article 4 of the Uniform Commercial Code—Completion of the Process of Posting,* 43 Mo L Rev 734
(1978). While completion of the process of posting
is one method by which a bank renders itself
accountable for the amount of an item, that process is more than the primarily mechanical steps
listed in MCL 440.4109(a)-(e); MSA 19.4109(a)-(e).
The process involves both the subjective decision of
the bank to pay the item and the mechanical steps
necessary to register that decision. *Idah-Best, Inc v
First Security Bank of Idaho,* 99 Idaho 517; 584
P2d 1242 (1978) *(Idah-Best I), Gibbs v Gerberich,* 1
Ohio App 2d 93; 203 NE2d 851 (1964). The statute
itself defines the process as the bank's "usual
procedure * * * in determining to pay an item and
in recording the payment * * *". Clearly, more
than mere evidence of a "paid" stamp is required.

There was ample evidentiary support for the
conclusion that these "paid" stamps were affixed
erroneously when the return items were microfilmed. MCL 440.4109(e); MSA 19.4109(e) explicitly
provides for correction of erroneous action. See
Malcolm, *Reflections on West Side Bank: A Draftsman's View,* 18 Cath U L Rev 23 (1968). In addition, the record is devoid of any evidence that a
decision was ever made to honor these checks. On
the contrary, it is uncontroverted that the checks
were listed on the unposted report prepared by the
EPC. They were never charged to Hassell's account. They were never separated from the return
items and delivered to the EPC for reprocessing.
There was evidence that defendant's "paid"
stamps normally were affixed to the face of checks.

These stamps were affixed on the back. Clearly the court's finding and conclusion were the sole reasonable finding and conclusion supported by the evidence.

## III

Plaintiff's final argument concerns the trial court's denial of plaintiff's motion for assessment against defendant of costs incurred by plaintiff in connection with the deposition of Monica Myers, an employee of the Federal Reserve Bank in Detroit. Defendant has not responded to plaintiff's request that this Court reverse the trial court's denial of the assessment of these costs.

On September 5, 1980, Ms. Myers was deposed. The deposition was scheduled by defendant's counsel and plaintiff's attorney attended. Upon arrival at the Federal Reserve Bank building in Detroit for the deposition, plaintiff's attorney was informed that the scope of the deposition would be limited to matters previously agreed upon by defendant's attorney and the Federal Reserve Bank. Plaintiff's attorney objected to the limited scope of the deposition. Once plaintiff's attorney began to ask questions which were beyond the restrictions placed on the deposition by defendant's attorney, the depondent, through a Federal Reserve Bank attorney, refused to answer. By agreement of all who participated in the deposition, a continuation of the deposition was held approximately two months later. At that time, plaintiff's attorney noted that the deposition was to cover all things permissible under the general court rules.

GCR 1963, 302.2(1) provides that persons taking depositions shall be permitted to examine the

deponent regarding any unprivileged, admissible, relevant matter. Upon motion seasonably made by either party or by the person to be examined and upon reasonable notice and upon good cause shown, the court may order that the scope of the examination shall be limited to certain matters. GCR 1963, 306.2.

In our judgment, the trial court erred in denying plaintiff's request for assessment of these costs. Plaintiff's attorney was perfectly justified in expecting that he was going to be able to depose Ms. Myers regarding any unprivileged, admissible, relevant matter. Contrary to the requirements of GCR 1963, 306.2, defendant unilaterally limited the scope of the September, 1980, deposition. At no time did defendant seek a court order allowing such restriction. As a result of the limitation, of which plaintiff was not timely informed, plaintiff's attorney made what was, from his standpoint, a disappointingly unproductive trip to Detroit.

From plaintiff's attorney's standpoint, the situation was somewhat analogous to having attended the deposition only to find that the witness would not attend because of defendant's failure to subpoena her. In such situations, the court is authorized to assess expenses against the guilty party. GCR 1963, 306.7(2). Also analogous is the case of a deponent who refuses, without substantial justification, to answer a question and whom the court ultimately orders to answer. In such situations the court must require reimbursement of expenses incurred in obtaining the court order. GCR 1963, 313.1(1) and 313.1(3). Also see *Jack's Factory Outlet v Pontiac State Bank,* 95 Mich App 174; 290 NW2d 114 (1980).

We order that the costs and expenses reasonably incurred by plaintiff in connection with the September 5, 1980, deposition of Monica Myers be assessed against defendant.

## IV

In light of our disposition of this case and because defendant has not filed a cross-appeal, we decline to review defendant's claim that the trial court erroneously denied defendant's motion for summary judgment.

Defendant is hereby ordered to pay to plaintiff the amount of reasonable costs and expenses incurred by plaintiff in attending the September 5, 1980, deposition of Monica Myers. In all other respects, we affirm the trial court's entry of judgment in favor of defendant.

Neither party having prevailed in full, no appeal costs shall be allowed to either party.