CITIZENS FIDELITY BANK & TRUST CO., A KENTUCKY BANKING CORPORATION, APPELLEE, V. SOUTHWEST BANK & TRUST CO., A NEBRASKA BANKING CORPORATION, APPELLANT.

472 N.W.2d 198

Filed July 19, 1991.    No. 89-363.

· Michael G. Helms and Mark R. Scherer, of Schmid, Mooney & Frederick, P.C., for appellant.

Thomas M. Locher and Donald J. Pavelka, Jr., of Hansen, Engles & Locher, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Citizens Fidelity Bank & Trust Co., a Kentucky banking corporation, brought an action against Southwest Bank & Trust Co., a Nebraska banking corporation, and claimed that Southwest, payor of a counterfeit check, wrongfully refused to honor the check which Citizens had forwarded to Southwest for payment. After a bench trial in which evidence was presented through testimony, exhibits, and a stipulation between the parties, the district court entered a $70,000 judgment for Citizens, Southwest appealed, and we affirm.

## THE CHECK

On June 30, 1986, John Greenwade deposited a $138,427 check into his checking account at Citizens. Regarding this check, Southwest was the payor, Country Wide Insurance Agency was the drawer, and Greenwade was the payee. The check was dated June 26, 1986, bearing check No. 021586 and a facsimile signature of Diederike Fulkerson, a Country Wide employee who is authorized to sign and issue checks on behalf of the insurance company. The parties stipulated that the counterfeit check appeared to be identical to checks used by Country Wide, except for a slight difference in "check safety paper," and that Country Wide "did not prepare or issue the original of the [check] nor did any person on behalf of Countrywide [sic] Insurance Agency cause the facsimile signature of Diedericke [sic] Fulkerson to appear thereon."

## THE COLLECTING PROCESS

Citizens forwarded the check to the Federal Reserve bank in Louisville, Kentucky, which federal bank on July 3, 1986, presented the check to Southwest in Omaha, Nebraska. A computer servicing company employed by Southwest posted

and sorted the check and then returned the check to Southwest on July 7. That same day, Greenwade withdrew $20,000 cash and $50,000 in certified funds from his checking account at Citizens.

## DISCOVERY OF THE COUNTERFEIT

On July 7, a corporate officer of Exchange Bank in Mount Sterling, Kentucky, called Louise Smith, head bookkeeper for Citizens, and told her that Exchange Bank, which maintained some type of deposit account for Greenwade, was having a "large" check returned to them because the check was counterfeit. Smith immediately notified all of Citizens' tellers that if Greenwade attempted any transaction concerning his account at Citizens, the tellers should alert a senior bank officer at Citizens. However, Greenwade had already withdrawn $70,000 from Citizens 15 minutes before Smith's instructions to the bank's tellers. Smith telephoned Southwest and spoke with Jacqueline Schneider. Smith inquired whether the Greenwade check had been paid, and Schneider replied that the check had been paid and cleared. Smith testified that after Schneider told her that the check had been paid, she believed it was unnecessary to tell Schneider that the check might be counterfeit.

On July 9, Country Wide informed Smith that the Greenwade check was counterfeit. That same day, Southwest notified Citizens that Southwest refused to honor the check and returned the check to Citizens. The parties agree that Southwest's deadline for giving notice of dishonor under Neb. U.C.C. §§ 4-302(a) and 4-104(h) (Reissue 1980) was midnight July 7 and that Southwest did not give such notice until July 9. On August 5, Citizens demanded payment of $138,427, a demand rejected by Southwest. Citizens attempted to collect the funds withdrawn by Greenwade, but failed to recover proceeds from the counterfeit check.

Citizens sued Southwest to recover the proceeds from the counterfeit check paid to Greenwade, claiming two theories of recovery: Southwest failed to give timely notice of dishonor in accord with § 4-302, and Citizens is a holder in due course under Neb. U.C.C. § 3-418 (Reissue 1980). As the result of a

bench trial, the district court entered a $70,000 judgment against Southwest.

## ASSIGNMENTS OF ERROR

Southwest contends that the evidence is insufficient to establish that Citizens was actually damaged or that Citizens was a holder in due course. Southwest also contends that the district court failed to recognize Southwest's defenses, namely, nonholders in due course are not entitled to payment on a counterfeit check and Citizens' breach of presentment warranties and of the obligation of good faith. Thus, the appellate questions are whether Southwest is liable to Citizens on account of the counterfeit check transaction and whether Citizens, as a part of its cause of action, must prove actual damages from the transaction. None question the method utilized by the district court in determining the amount of the judgment.

We note that Nebraska law applies to this case in accord with Neb. U.C.C. § 4-102(2) (Reissue 1980): "The liability of a bank for action or nonaction with respect to any item handled by it for purposes of presentment, payment or collection is governed by the law of the place where the bank is located. . . ."

## STANDARD OF REVIEW

In a bench trial of a law action, a trial court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous. . . . In reviewing a judgment awarded in a bench trial of a law action, the Supreme Court does not reweigh evidence but considers the evidence in a light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. . . .

*Oddo v. Speedway Scaffold Co.*, 233 Neb. 1, 2, 443 N.W.2d 596, 598-99 (1989). Accord, *Wurst v. Blue River Bank*, 235 Neb. 197, 454 N.W.2d 665 (1990); *Alliance Nat. Bank v. State Surety Co.*, 223 Neb. 403, 390 N.W.2d 487 (1986).

In a bench trial of a law action, the court, as the "trier of fact," is the sole judge of the credibility of witnesses and the weight to be given their testimony. Among the factors

entering into the trial court's resolution of any conflicts of evidence are such items as the respective interests of the parties in the litigation; the demeanor of witnesses, including the parties, while testifying before the court; the apparent fairness exhibited by witnesses; the extent to which testimony of various witnesses is corroborated; and the reasonableness or unreasonableness of testimony from the witnesses.

*Lynn v. Metropolitan Utilities Dist.*, 225 Neb. 121, 125, 403 N.W.2d 335, 338 (1987). Accord *State v. Craig*, 219 Neb. 70, 361 N.W.2d 206 (1985).

## PAYOR BANK'S RESPONSIBILITY
## FOR LATE RETURN OF ITEM

Section 4-302 provides:

In the absence of a valid defense such as breach of a presentment warranty (subsection (1) of Section 4-207), settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of

(a) a demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depository bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depository bank, does not pay or return the item or send notice of dishonor until after its midnight deadline . . . .

A counterfeit check, as an instrument for the payment of money, is an "item" under § 4-104(g). Although a counterfeit check is not a valid instrument, the Greenwade check was, nevertheless, an instrument payable on demand in accordance with the Uniform Commercial Code. Since no other document, security, or paper accompanied the counterfeit check, that instrument was not a "documentary draft" under § 4-104(f). According to the parties' stipulation, after presentment of the counterfeit check, Southwest refused to pay the check and failed to return the check by the midnight deadline. A plaintiff establishes a prima facie case for liability of a payor bank when the plaintiff shows that a check which is the basis for the suit has

been untimely dishonored, and the payor bank then has the burden to prove an excuse or defense for the untimely dishonor. *First Wyo. Bank v. Cabinet Craft Distrib.*, 624 P.2d 227 (Wyo. 1981). Therefore, in the absence of any valid defense, Southwest is "accountable" for the amount of the counterfeit check. See § 4-302.

Neb. U.C.C. § 4-207 (Reissue 1980), in relevant part, provides:

(1) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that

(a) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; and

(b) he has no knowledge that the signature of the maker or drawer is unauthorized, except that this warranty is not given by any customer or collecting bank that is a holder in due course and acts in good faith

(i) to a maker with respect to the maker's own signature; or

(ii) to a drawer with respect to the drawer's own signature, whether or not the drawer is also the drawee; or

(iii) to an acceptor of an item if the holder in due course took the item after the acceptance or obtained the acceptance without knowledge that the drawer's signature was unauthorized; and

(c) the item has not been materially altered, except that this warranty is not given by any customer or collecting bank that is a holder in due course and acts in good faith

(i) to the maker of a note; or

(ii) to the drawer of a draft whether or not the drawer is also the drawee; or

(iii) to the acceptor of an item with respect to an alteration made prior to the acceptance if the holder in due course took the item after the acceptance, even though the acceptance provided "payable as originally drawn" or equivalent terms; or

(iv) to the acceptor of an item with respect to an

alteration made after the acceptance.

Neb. U.C.C. § 1-203 (Reissue 1980) provides that "[e]very contract or duty within this act imposes an obligation of good faith in its performance or enforcement." Southwest claims that Citizens breached several presentment warranties under § 4-302 and its obligation of good faith under § 1-203, namely, "concealment of information from Southwest, at a time when Southwest would have been in a position to act upon the information prior to the expiration of its midnight deadline, clearly evidences a lack of good faith on the part of Citizens," and "information available to Citizens provided sufficient notice to it of the probable counterfeit . . . check prior to Southwest's acceptance of that check so as to constitute a breach of Citizens' presentment warranties." Brief for appellant at 25.

Neb. U.C.C. § 1-201(25) (Reissue 1980) provides in part that [a] person has "notice" of a fact when (a) he has actual knowledge of it; or (b) he has received a notice or notification of it; or (c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists.

Citizens knew that the Greenwade check bore the facsimile signature of Fulkerson, who was authorized to sign and issue checks on behalf of Country Wide and that the check appeared authentic. When Citizens learned that Greenwade had presented a "large" counterfeit check to Exchange Bank in Kentucky, Citizens alerted its tellers and instructed them to monitor the Greenwade account. Citizens immediately contacted Southwest, and Southwest told Citizens that the check had been paid and cleared; thus, Citizens believed it was unnecessary to inform Southwest that the Greenwade check might be counterfeit. Two days after Southwest's midnight deadline, Citizens gained actual knowledge that the Greenwade check was a counterfeit check. Clearly, before Southwest's midnight deadline Citizens had only a suspicion that the Greenwade check might be counterfeit.

Since Citizens did not have actual knowledge or notice before Southwest's midnight deadline that the Greenwade check was counterfeit, the question is whether Citizens had

reason to know that the check was counterfeit. A visual examination of the Greenwade check would not have disclosed that the check was counterfeit. Any suspicion that may have resulted from the conversation between Citizens and Exchange Bank was negated by Southwest's statement that the check had been paid and cleared. See *Peoria S & L Ass'n v. Jefferson Tr. & Sav. Bk*, 81 Ill. 2d 461, 471, 410 N.E.2d 845, 850 (1980): "Facts and circumstances calculated to merely arouse or excite suspicion cannot be equated with knowledge, or a reason to know." The evidence, therefore, supports the district court's finding that Citizens did not breach presentment warranties or an obligation of good faith.

Southwest next contends that Citizens has not proved that it suffered any damages from processing the Greenwade check. Southwest argues that since Greenwade had maintained a checking account at Citizens for 20 years, Citizens failed to establish whether any part of the $70,000 paid to Greenwade was paid from funds of the Country Wide check or from other funds currently on deposit for Greenwade at Citizens. Southwest insists that even if it is "strictly liable" under § 4-302, Citizens still must prove damages to recover on the counterfeit check.

Southwest, however, misconstrues accountability under § 4-302. If § 4-302 is applicable, a payor bank is accountable for the full amount of the draft, even in the absence of actual damages. *Union Bank of Benton v. First Nat. Bank*, 621 F.2d 790 (5th Cir. 1980) (failure of payor to timely pay or return items mandates strict liability for the face amount of any late items); *First State Bank v. Twin City Bank*, 290 Ark. 399, 720 S.W.2d 295 (1986) (since notification of dishonor was late, payor is accountable for the amount of the documentary drafts); *Reynolds-Wilson Lumber v. Peoples Nat. Bank*, 699 P.2d 146 (Okla. 1985) ("accountable" means strict liability for the amount of the draft with no requirement of actual damages); *Northwestern Nat. Ins. v. Midland Nat. Bank*, 96 Wis. 2d 155, 292 N.W.2d 591 (1980) (if payor fails to give timely notification of dishonor, payor is liable for the amount of the checks without any showing of actual damages); *Engine Parts v. Citizens Bank of Clovis*, 92 N.M. 37, 582 P.2d 809 (1978)

(payor is strictly liable for the amount of the items which it returned untimely); *Farmers Coop. Livestock Mkt. v. Second Nat. Bank*, 427 S.W.2d 247 (Ky. 1968) (payor is liable for the face amount of the item without proof of damages); *Rock Island Sales v. Empire Packing*, 32 Ill. 2d 269, 204 N.E.2d 721 (1965) (payor is liable for the face amount of the item after it fails to give timely notice of dishonor).

Courts have consistently expressed that the primary reason for automatic or strict liability under § 4-302 is a need for finality and certainty in business transactions; accordingly, if a payor bank fails to fulfill its statutory duty to return or dishonor an item in a timely manner, the payor bank is subject to sanction for its tardiness under the Uniform Commercial Code. For example, *First State Bank v. Twin City Bank, supra*; *Town & Country State Bank v. First State Bank*, 358 N.W.2d 387 (Minn. 1984); *State & Sav. Bank of Monticello v. Meeker*, 469 N.E.2d 55 (Ind. App. 1984); *Van Senus v Mi Nat'l Bank, Wy*, 116 Mich. App. 342, 323 N.W.2d 391 (1982). See, also, 6 W. Hawkland, Uniform Commercial Code Series § 4-302:01 at 61 (1984) (§ 4-302 provides the sanction of accountability for the full amount as a "remedy for the protection of depositary banks" based on "a need to protect depositary banks who were making funds available for withdrawal to their customers on the basis of a lapse of time without notice of nonpayment"). Hence, Citizens was not required to prove actual damages from the counterfeit check transaction.

It is unnecessary to discuss Citizens' other theory of recovery because Citizens has established a right to recover under § 4-302. Accordingly, we affirm the district court's judgment for Citizens in the amount of $70,000.

AFFIRMED.