**STATE AND SAVINGS BANK OF MONTICELLO, INDIANA, Defendant-Appellant,**

v.

**Arthur MEEKER, Plaintiff-Appellee.**

No. 2–284A44.

Court of Appeals of Indiana, First District.

Oct. 18, 1984.

dents have expressly authorized only evidence of the victim's reputation as evidence of his character.

James A. Strain, Richard A. Cohen, Barnes & Thornburg, Indianapolis, John M. Guy, Monticello, for defendant-appellant.

Leonard Opperman, George W. Hopper, Hopper & Opperman, Indianapolis, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

State and Savings Bank appeals a judgment awarding Arthur Meeker $204,000 representing the amount of a check made payable to him. The trial court entered summary judgment holding the bank strictly liable for the face amount of the check. We affirm in part and reverse in part.

## FACTS

On December 19, 1977, Arthur Meeker sold a 920 acre tract of land to Charles Brewer. The transaction involved a conditional sales contract requiring Brewer to continue making installment payments until the purchase price of $2,340,000 plus interest was paid. Pursuant to this agreement, Brewer drew a check on the account of C.T.S. Farms with the State and Savings Bank and delivered it to Meeker on March 2, 1981. The next day Meeker deposited the check in his bank (depositary bank) and on March 4, 1981, when the check was presented to State and Savings Bank it was marked paid. At that time the account of C.T.S. Farms showed a balance of $207,-972.32 which apparently was sufficient to pay the check received by Meeker. However, $123,000 of the balance in the C.T.S. Farms account represented credit from a check Brewer had deposited. On March 11, 1981, the check Brewer had deposited was dishonored by the bank upon which it was drawn. This depleted the balance in the C.T.S. Farms account by $123,000 and the account was insufficient to cover the $204,-000 check given to Meeker.

Meeker, therefore, did not receive payment, as required by the contract, and Brewer was in default. Meeker brought a foreclosure proceeding which was settled by transferring the property back to him. In November of 1982, Meeker brought this action against State and Savings Bank alleging that it was strictly liable for the amount of the check. The trial court entered summary judgment on Meeker's motion against the appellant-Bank for the face amount of the check and the bank now appeals.

## ISSUES

Rephrased the issues presented are as follows:

1. Whether Indiana Code section 26–1–4–302 [1] imposes strict liability on a payor bank which holds a check beyond its midnight deadline?

2. Can a bank, which honors a check because of a mistaken belief that the account contains sufficient funds, avoid liability on equitable grounds?

3. Whether a payor bank, which holds a check beyond its midnight deadline, is liable for the total amount of the check, even though the payee may have mitigated his loss.

## DISCUSSION AND DECISION

*Issue One*

■ It is undisputed that State and Savings Bank held the check drawn by Brewer beyond its midnight deadline. Liability for the bank's action is controlled by U.C.C. § 4–302(a) which states:

> "In the absence of a valid defense such as breach of a presentment warranty (subsection (1) of section 4–207), settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of
>
> (a) a demand item ... if the bank ... does not pay or return the item or send notice of dishonor until after its midnight deadline [2] ..."

While no Indiana court has addressed a bank's liability under U.C.C. § 4–302 the vast majority of other jurisdictions, which have addressed the issue, hold a payor bank strictly liable when it neither pays nor dishonors a check before midnight the day after receipt. *See e.g., Union Bank of Benton v. First National Bank*, (5th Cir. 1980) 621 F.2d 790 *appeal after remand* 677 F.2d 1074 (Texas law); *Central Bank & Trust Co. v. First Northwest Bank*, (E.D.Mo.1971) 332 F.Supp. 1166, *aff'd* 458 F.2d 511 (Alabama and Missouri law); *Bank of America v. Security Pacific National Bank*, (1972) 23 Cal.App.3d 638, 100 Cal.Rptr. 438; *Peoples Bank in North*

---

1. Hereinafter the provisions of the Uniform Commercial Code will be cited as they appear in their model form.

2. The payor bank's midnight deadline is midnight the day after receipt of the check. U.C.C. § 4–104(1)(h).

*Fort Myers v. Bob Lincoln Inc.,* (1973) Fla.App., 283 So.2d 400 (apparently recognizing the rule); *Rock Island Auction Sales, Inc. v. Empire Packing Co.,* (1965) 32 Ill.2d 269, 204 N.E.2d 721; *Leaderbrand v. Central State Bank,* (1969) 202 Kan. 450, 450 P.2d 1; *Farmers Cooperative Livestock Market, Inc. v. Second National Bank,* (1968) Ky.App., 427 S.W.2d 247; *Raymer v. Bay State National Bank,* (1981) 384 Mass. 310, 424 N.E.2d 515; *Sun River Cattle Co. v. Miners Bank of Montana,* (1974) 164 Mont. 237, 521 P.2d 679, *appeal on other grounds,* 164 Mont. 479, 525 P.2d 19; *Prestege Motors, Inc. v. Carteret Bank & Trust Co.,* (1982) 183 N.J.Super. 525, 444 A.2d 627; *Engine Parts, Inc. v. Citizens Bank of Clovis,* (1978) 92 N.M. 37, 582 P.2d 809; *Met Frozen Foods Corp. v. National Bank of North America,* (1977) 89 Misc.2d 1033, 393 N.Y.S.2d 643; *Goodman v. Norman Bank of Commerce,* (1977) Okla., 565 P.2d 372; *Yeiser v. Bank of Adamsville,* (1981) Tenn., 614 S.W.2d 338; *Suttle Motor Corp. v. Citizens Bank of Poquoson,* (1976) 216 Va. 568, 221 S.E.2d 784; *Northwestern National Insurance Co. v. Midland National Bank,* (1980) 96 Wis.2d 155, 292 N.W.2d 591; *First Wyoming Bank v. Cabinet Craft Distributors, Inc.,* (1981) Wyo., 624 P.2d 227. For a more comprehensive list of cases which apply strict liability under U.C.C. § 4–302 see 22 A.L.R.4th 10, 22–24. The statute states the bank becomes accountable for the item and this is synonymous with being liable for the item. *Rock Island.* It does not matter whether the check was properly or improperly payable at its inception. J. Reitman et al., *Banking Law* § 135.10 (1981).

The only exception to the imposition of strict liability is U.C.C. § 4–108(2) which excuses delay under certain circumstances. Indiana Code section 26–1–4–108(2). To take advantage of this section, the bank must show the reason for the delay, that delay was caused by circumstances beyond the control of the bank and that the bank exercised due diligence under the circumstances. *Sun River.* Normally, the question of whether a bank is excused pursuant to U.C.C. § 4–108(2) would be a question of fact. However, the bank asserts that the sole reason for the delay was its mistaken belief that C.T.S. Farms had sufficient funds to cover the check payable to Meeker. Clearly this mistake is not beyond the control of the bank. Rather, the bank was the only party which could have prevented the mistake. Furthermore, the claimed mistake in this case was not an excuse intended to fall under U.C.C. 4–108(2). Examples of situations which may excuse delay are: "blizzards, floods, hurricanes, and other 'Act of God' events or conditions, and wrecks and disasters, interfering with mails; suspension of payments by another bank; abnormal operating conditions such as substantial increased volume or substantial shortage of personnel during war or emergency situations." U.C.C. § 4–108 comment 4. Because the bank does not point to any circumstances beyond its control, we cannot excuse its mistake and strict liability applies.

## Issue Two

The appellant contends that because it paid the check due to a mistake of fact that equitable restitution should apply allowing the bank to avoid liability for the check. The appellant relies on *Demos v. Lyons,* (1977) 151 N.J.Super. 489, 376 A.2d 1352, where the court found in *dicta* that a bank which by mistake held a check beyond its midnight deadline could avoid liability by asserting the equitable defense of mistake. The appellant's reliance on *Demos* is misplaced since that court did not address the specific question of whether the defense of mistake was still available despite the clear language of U.C.C. § 4–302. In *Bank of Leumi Trust Co. of New York v. Bank of Mid-Jersey,* (D.N.J.1980) 499 F.Supp. 1022, *aff'd* 659 F.2d 1065, the court found that U.C.C. § 4–302 displaced the operation of common law equitable principles. We believe *Bank of Leumi* should control since allowing the bank the defense of mistake would be directly contrary to the plain meaning of U.C.C. § 4–302 which makes the bank liable regardless of mis-

take or negligence. Also, it is crucial that business transactions involving negotiable instruments become final at a certain point and therefore the U.C.C. imposes automatic liability after the passage of specific time limits. *See* U.C.C. § 4–213 official comment 1. If banks were allowed to retain instruments beyond the time specified in the U.C.C. and avoid liability on equitable grounds, finality and certainty would not exist in the business world. *Id.* Therefore, State and Savings Bank cannot avoid the strict liability imposed by U.C.C. 4–302 on equitable grounds.

### Issue Three

The next question concerns the amount for which the bank is liable. While many cases have stated that a payor bank is strictly liable for the face amount of the check, some have allowed this amount to be reduced where the payee has mitigated damages. *Berman v. United States National Bank*, (1976) 197 Neb. 268, 249 N.W.2d 187; *Met Frozen Food Corp.; Union Bank of Benton.* These cases are similar to the case at bar because they also involve situations where the payee had recourse against the drawer of the check. Each case allowed the payor bank's liability to be reduced by the amount obtained by the payee. In the present case the trial court awarded the payee the face amount of the check; $204,000. The evidence shows, however, that Meeker received the property back from Brewer, the drawer of the check. This foreclosure represents an alternative source which may have partially or completely compensated Meeker for his loss. An issue of material fact must be resolved to determine if, and to what extent, Meeker's damages have been mitigated. The extent to which damages have been mitigated, if any, should be subtracted from the $204,000 award.

Meeker argues that his actual loss was $354,000 which was established and unchallenged in the record. This figure represents the $204,000 installment payment and $150,000 rental value lost as a result of Brewer's default. Meeker argues that because his statements regarding damages went unchallenged that he is entitled to judgment as a matter of law. We disagree. In review of a motion for summary judgment we construe all material on file in favor of the nonmoving party. *Moll v. South Central Solar Systems*, (1981) Ind.App., 419 N.E.2d 154. Meeker answered interrogatories stating that he obtained the real estate after Brewer defaulted. This alone creates an inference that he may have been compensated for his $204,000 loss. The conclusory statement by Meeker that he incurred a loss of $354,000 merely establishes that a genuine issue of material fact remains regarding the extent of his damages.

The trial court's finding that the bank is strictly liable is affirmed. However, we believe the bank has raised a genuine issue of material fact as to the amount of actual loss sustained by Meeker, or, to state it another way, the extent, if any, his damages have been mitigated. Therefore, we remand for further proceedings on this issue consistent with this opinion.

NEAL, P.J., and ROBERTSON, J., concur.