TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00773-CV






Roland L. Baird and Baird Oil Company, Inc./Lease Acquisition


Partners, Inc., Appellants



v.



Lease Acquisition Partners, Inc. and William Stanton McDonald/Roland Baird


and Baird Oil Company, Appellees






FROM THE DISTRICT COURT OF LEE COUNTY, 21ST JUDICIAL DISTRICT


NO. 11,006, HONORABLE H. R. TOWSLEE, JUDGE PRESIDING






 This appeal is the culmination of a series of disputes between appellants Roland L.
Baird ("Baird") and Baird Oil Company, Inc. ("Baird Oil") on the one hand, and appellees Lease
Acquisition Partners, Inc. ("Partners") and William Stanton McDonald ("McDonald") on the other,
arising from an oil and gas lease entered into between Baird and Partners. Partners initiated the
district-court suit, asserting several causes of actions against Baird and Baird Oil.(1) Baird and
Baird Oil responded with various counterclaims and a third-party action against McDonald,
Partners' president.(2) Over the course of litigation, the parties voluntarily dismissed several
claims. As to others, the parties moved for summary judgment and the district court partially
granted their motions. The parties settled their remaining claims, resulting in a final appealable
judgment. Baird appeals the district court's summary judgment with regard to two of his
counterclaims against Partners--breach of an indemnity agreement and intentional infliction of
emotional distress.(3) We will affirm.


FACTUAL & PROCEDURAL BACKGROUND

 McDonald is the president of both Partners and Stanton Mineral Development, Inc.
("Stanton"). Baird is the president of Baird Oil. In March 1997, Baird Oil and Stanton agreed that
Stanton would acquire all of Baird Oil's rights in six producing oil and gas wells located on
approximately 294 acres of land in Lee County owned by Baird, his brother Goar William Baird,
and his sister Hertha Baird Kennedy, and subject to an oil and gas lease in favor of Baird Oil. 
Baird Oil was the operator of the wells. Partners replaced Stanton as a contracting party and the
transaction closed on April 25, 1997. To consummate the transaction, the parties signed several
documents. Baird Oil assigned to Partners its interest in the wells and equipment located on the
Baird acreage, as well as its interest in future production from the wells. Baird Oil relinquished
its oil and gas lease from the Baird family, who then signed a new oil and gas lease with Partners
(the "Lease").(4) Partners assigned an undivided five-percent interest in the Lease to Baird
individually. With one exception, all of the documents were signed April 25, but were to be
effective as of May 1, 1997.(5) Also on April 25, Baird Oil signed a Texas Railroad Commission
Form P-4 that identified Stanton as the new operator of the wells, replacing Baird Oil. However,
the P-4's effective date was April 1, 1997. Baird claims to have been unaware of the April 1
effective date. The Railroad Commission approved the new P-4 on April 28.

 The dispute leading to this appeal began at once. On the afternoon of April 25,
Partners went on the land described in the Lease and took possession of 107 barrels of oil that
Baird claimed belonged to him. A dispute also arose concerning ownership of two pumpjacks,
both of which Baird Oil had previously sold to a third party but one of which was still on the
leased property. Partners "took over" the six wells and immediately shut down production. In
addition, the purchaser of gas from the wells informed Partners that Baird had stated that Partners
did not have the authority to sell the gas.

 Settlement negotiations between Partners and Baird failed, and Partners filed suit
seeking a declaration of its rights under the Lease and a temporary and permanent injunction
prohibiting Baird from interfering with Partners' activities on the property subject to the Lease. 
Partners also sought damages for conversion of the two pumpjacks, common-law fraud, and
tortious interference with the contract between Partners and its gas purchaser. Baird
counterclaimed, alleging breach of contract, conversion, tortious interference with contract, fraud,
breach of fiduciary duty, and intentional infliction of emotional distress. Baird also requested an
accounting. Baird later filed claims for trespass and indemnity. Baird moved for partial summary
judgment on Partners' claims for declaratory judgment, tortious interference, and conversion. 
Partners filed a motion for partial summary judgment, seeking a declaratory judgment setting forth
the parties' rights under the Lease and dismissal of Baird's counterclaims for indemnity,
conversion, tortious interference, breach of fiduciary duty, trespass, and accounting. The district
court denied Partners' motion but granted part of Baird's motion, ruling that Partners take nothing
by its declaratory-judgment claim.

 Both parties amended their pleadings to allege additional claims and again moved
for summary judgment. Several of both parties' claims were dismissed pursuant to settlement. 
The district court entered a second partial summary judgment favorable in part to both parties. 
Most relevant to this appeal, the district court ruled that Baird take nothing by his claims for
breach of the indemnity agreement and intentional infliction of emotional distress. The parties
settled the remainder of their claims, resulting in a final judgment.

 By two issues, Baird appeals the district court's judgment that they take nothing on
their claims for indemnification and intentional infliction of emotional distress. Specifically, they
argue that the indemnity agreement unambiguously requires Partners to indemnify them for all
attorney's fees, expenses, and costs they incurred in defending Partners' claims and prosecuting
their counterclaims. Baird further asserts that there is a fact issue regarding his intentional-infliction counterclaim.


DISCUSSION


Standard of Review

 Baird appeals from a summary judgment in favor of Partners. The propriety of
summary judgment is a question of law, and we review the district court's decision de novo. 
Natividad v. Alexis, Inc., 875 S.W.2d 695, 699 (Tex. 1994). The standards for reviewing a
motion for summary judgment are well established: (1) the movant for summary judgment has
the burden of showing that no genuine issue of material fact exists and that it is entitled to
judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue
precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3)
every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved
in its favor. Nixon v. Mr. Property Management Co., Inc., 690 S.W.2d 546, 548-49 (Tex. 1985). 
The function of summary judgment is not to deprive litigants of the right to trial by jury but to
eliminate patently unmeritorious claims and defenses. Swilley v. Hughes, 488 S.W.2d 64, 68
(Tex. 1972).


Indemnity

 By his first issue, Baird claims that the district court erred in granting summary
judgment for Partners and denying his motion seeking damages and attorney's fees pursuant to an
indemnification provision contained in the Lease. The interpretation of an agreement is purely a
question of law. Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589
(Tex. 1996) (determining whether contract is ambiguous is question of law); Coker v. Coker, 650
S.W.2d 391, 393 (Tex. 1983) (if contract is unambiguous, court will construe contract as question
of law). When construing a written contract, we "ascertain the intent of the parties as expressed
in the instrument." National Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex.
1995). In deciding whether a contract is ambiguous, we consider the written instrument as a
whole and determine if it is subject to more than one reasonable interpretation in light of the
circumstances present at the time of its formation. Grain Dealers Mut. Ins. Co. v. McKee, 943
S.W.2d 455, 458 (Tex. 1997). If the contract can be given a certain or definite legal meaning,
it is not ambiguous and should be construed as a matter of law. Id.; CBI Indus., 907 S.W.2d at
520. An ambiguity does not arise simply because the parties advance different interpretations of
the contract's language. Grain Dealers, 943 S.W.2d at 458.

 The provision in question provides:


[Partners] agrees to indemnify and hold [Baird(6)] harmless against any and all
claims, demands, damages, costs and expenses, including reasonable attorney's
fees for the defense of such claims and demands, arising from the conduct or
management of [Partners'] business on the leased premises, or from any breach on
the part of [Partners] of any condition of this lease, or from any act or negligence
of [Partners], its agents, contractors, employees, subtenants, assignees or licensees,
in or about the leased premises. In case of any action or proceeding brought
against [Baird] by reason of any such claim, [Partners], upon notice from [Baird],
agrees to defend the action or proceeding by counsel acceptable to [Baird].



(Footnote added.) Neither party argues that the provision is ambiguous, and indeed, it is not.

 Baird claims that this provision entitles him to the recovery of all of his attorney's
fees, expenses, and costs incurred in defending Partners' claims against him and prosecuting his
counterclaims against Partners. Partners responds that Baird's interpretation of the agreement is
"inconsistent with the parties' intent as expressed in the provision itself." Partners also argues that
"to hold that Partners must indemnify Baird against Partners' claims for Baird's own wrongdoing
would violate long-standing rules governing the construction and application of contracts of
indemnity." According to Partners, these rules of construction include the following: (1) courts
should interpret contracts so as to find mutuality of obligation;(7) (2) courts should interpret
contracts so as to avoid a resulting unenforceable illusory promise;(8) (3) courts should strictly
construe indemnity agreements in favor of the indemnitor (Partners);(9) and (4) courts should strictly
construe contracts against the drafter (Baird).(10)

 Resolution of this issue is reached by a shorter route than that proposed by Partners. 
The agreement between Baird and Partners is clearly one of indemnity, and no party argues
otherwise. Both parties consistently refer to this language as an "indemnity clause," "indemnity
provision," or "indemnity/hold harmless agreement." The parties' disagreement stems from the
interpretation of the agreement, not its classification as an indemnity agreement. An indemnity
agreement arises from a promise by the indemnitor to safeguard or hold harmless against existing
or future loss, liability, or both. Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d 505,
508 (Tex. 1993); Wallerstein v. Spirt, 8 S.W.3d 774, 779 (Tex. App.--Austin 1999, no pet.);
Derr Constr. Co. v. City of Houston, 846 S.W.2d 854, 858 (Tex. App.--Houston [14th Dist.]
1992, no writ). Such is the plain intent of the quoted provision of the Lease.

 A characteristic of an indemnity agreement is that it "does not apply to claims
between the parties to the agreement." Wallerstein, 8 S.W.3d at 780 (citing Derr Constr., 846
S.W.2d at 858). "[A] contract of indemnity does not relate to liability claims between the parties
to the agreement but, of necessity, obligates the indemnitor to protect the indemnitee against
liability claims of persons not a party to the agreement." Dresser Indus., Inc. v. Page Petroleum,
Inc., 821 S.W.2d 359, 362-63 (Tex. App.--Waco 1991), rev'd on other grounds, 853 S.W.2d 505
(Tex. 1993) (emphasis added). Baird offers no reason why this principle does not apply to the
facts before us. Because both Baird and Partners are parties to the indemnity agreement, the
agreement does not obligate Partners to pay Baird's attorney's fees, expenses, and costs incurred
defending himself against Partners' claims and prosecuting his counterclaims against Partners. 
We overrule Baird's first issue.


Intentional Infliction of Emotional Distress

 By his second issue, Baird asserts that the district court erred in granting Partners'
motion for summary judgment regarding Baird's allegations of intentional infliction of emotional
distress. The elements of intentional infliction of emotional distress are as follows: (1) the
defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the
actions of the defendant caused the plaintiff emotional distress; and (4) the emotional distress
suffered by the plaintiff was severe. Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993)
(citing Restatement (Second) of Torts § 46 (1965)). In its motion for summary judgment, Partners
argued that as a matter of law Partners' conduct was not extreme and outrageous and that Baird's
emotional distress was not severe. Partners also argued that Baird's claim was a disguised claim
for mental-anguish damages for breach of contract. The district court granted Partners' motion
without stating his reasons. In reviewing a summary judgment in which the trial court has not
provided the basis for its decision, we must review each ground asserted in the motion that the
appellant challenges on appeal and affirm the trial court's judgment if any of these grounds is
meritorious. Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995); Channel Equip. Co.
v. Community State Bank, 996 S.W.2d 374, 376 (Tex. App.--Austin 1999, no pet.). On appeal,
Baird argues that he established a fact issue as to the two elements Partners attacked.

 It is for the trial court to determine, in the first instance, whether a defendant's
conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. Wornick
Co. v. Casas, 856 S.W.2d 732, 734 (Tex. 1993). Liability for outrageous conduct may be found
where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond
all possible bounds of decency, and is to be regarded as atrocious, and utterly intolerable in a
civilized community." Twyman, 855 S.W.2d at 621. In his brief, Baird urges that the following
acts of Partners constitute extreme and outrageous conduct: 



 filing a false and perjurious affidavit with the district court, creating a false
document and submitting it to the district court in support of Partners' motion
for summary judgment, and filing that same document in the Real Property
Records of Lee County;(11)
 filing suit against Baird and prosecuting claims against him related to the validity
of the lease when Baird repeatedly swore the lease was valid;

 compelling Baird to defend himself first on claims seeking over $260,000 in
damages and then on claims seeking over $3 million in damages;

 engaging in conduct that McDonald concedes was designed to punish Baird;(12)


 


 prematurely entering the Baird land;

 failing to drill any new wells on the land as promised;

 shutting down Baird's wells without his consent prior to the effective date of the
lease; and

 failing to return Baird's repeated phone calls seeking an explanation for this
conduct.




The Perjurious Conduct

 In response, Partners points out that there is no summary-judgment proof that its
alleged creation and filing of false documents caused emotional stress to Baird. Baird filed an
affidavit in which he avers that various acts of Partners caused him emotional distress. However,
the affidavit does not mention Partners' creation and filing of false documents. Baird's affidavit
states generally that "the filing of this suit against me and continuing to prosecute their frivolous
claims related to the validity of the [Lease] after I had repeatedly affirmed its validity under oath"
and "compelling me to defend myself against baseless damage claims seeking in excess of $3
million in damages" caused him severe emotional distress. General statements about "frivolous
claims" and "baseless damages claims" do not constitute probative evidence that Partners'
falsification and subsequent filing of a document caused Baird emotional distress. See Brownlee
v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984) (affidavit is insufficient to create fact issue unless
statements are direct, unequivocal, and perjury can be assigned to them).

 Baird argues that his response to Partners' motion for summary judgment provides
evidence that Partners' falsifying a document and then filing and utilizing that document in this
litigation caused him severe emotional distress. However, pleadings are not competent summary-judgment evidence, even if sworn or verified. Laidlaw Waste Sys., Inc. v. City of Wilmer, 904
S.W.2d 656, 661 (Tex. 1995); Hidalgo v. Surety Sav. & Loan Ass'n, 462 S.W.2d 540, 545 (Tex.
1971). Because Baird has not submitted any competent summary-judgment evidence that Partners'
act of falsifying a document, subsequently filing it, and utilizing it in this litigation caused him
emotional distress, we will not consider that conduct in our analysis.


Filing Suit Against Baird

 Baird also alleges that Partners caused him to suffer severe emotional distress when
it filed suit against him seeking punitive damages, thus forcing Baird to defend himself. Baird
does not allege that Partners filed this suit with the particular intent to cause him emotional
distress. Under these facts, Partners' filing of its lawsuit does not, as a matter of law, constitute
actionable conduct. See Motsenbocker v. Potts, 863 S.W.2d 126, 132 (Tex. App.--Dallas 1993,
no writ) ("Outrageous conduct is privileged where the actor 'has done no more than to insist upon
his legal rights in a permissible way, even though he is well aware that such insistence is certain
to cause emotional distress.'") (quoting Restatement (Second) of Torts § 46 cmt. 6 (1965)); Lang
v. City of Nacogdoches, 942 S.W.2d 752, 760 (Tex. App.--Tyler 1997, writ denied) ("There is
no liability for intentional infliction of emotional distress where an actor does no more than insist
on his legal rights.") (citing McClendon v. Ingersoll-Rand Co., 757 S.W.2d 816, 820 (Tex.
App.--Houston [14th Dist.] 1988), aff'd, 807 S.W.2d 577 (Tex.1991)).


Partners' Other Acts

 Baird next alleges that Partners caused him severe emotional distress when it
prematurely entered the Baird land, failed to drill new wells as promised, and shut down Baird's
previously existing wells before the effective date of the lease. Throughout this litigation, Baird
has pursued causes of actions based on this same conduct--trespass for entering his land without
consent, breach of fiduciary duty for shutting down the existing wells, and breach of the duty to
develop oil and gas property for failing to drill other wells. Baird does not allege that Partners'
motivation was to cause him emotional distress. In Standard Fruit & Vegetable Co. v. Johnson,
985 S.W.2d 62 (Tex. 1998), the supreme court upheld summary judgment against the plaintiff who
alleged that he suffered intentional infliction of emotional distress when he witnessed the defendant
drive his trailer-tractor into a parade in which the plaintiff was participating. See id. at 68. After
discussing the development of the tort of intentional infliction of emotional distress, the supreme
court stated: 


In short, intentional infliction of emotional distress is a "gap-filler" tort that should
not be extended to circumvent the limitations placed on the recovery of mental
anguish damages under more established tort doctrines. . . .


 Based on this review of the development of the tort, we hold that a claim
for intentional infliction of emotional distress cannot be maintained when the risk
that emotional distress will result is merely incidental to the commission of some
other tort. . . . We, therefore, hold that [the plaintiff] may not recover under an
intentional infliction of emotional distress theory because emotional distress was
not the intended or primary consequence of [the defendant's] conduct.



Id. (emphasis added). We likewise hold that Baird cannot rely on Partners' acts of prematurely
entering the Baird land and shutting down the existing wells to recover for intentional infliction
of emotional distress. Any resulting emotional distress is merely incidental to the commission of
the underlying torts. Furthermore, we believe that the supreme court's reasoning in Standard
Fruit & Vegetable is equally applicable to contract claims. Generally, mental-anguish damages
are not recoverable in an action for breach of contract. Stewart Title Guar. Co. v. Aiello, 941
S.W.2d 68, 72 (Tex. 1997). We hold that Baird cannot rely on Partners' act in breaching a
contractual obligation (the duty to develop) to recover for intentional infliction of emotional
distress because, under these facts, the risk of resulting emotional distress from this act is merely
incidental to the commission of the breach. Cf. Standard Fruit & Vegetable, 985 S.W.2d at 68;
see also Wieler v. United Sav. Ass'n of Texas, FSB, 887 S.W.2d 155, 159 (Tex. App.--Texarkana
1994), writ denied per curiam, 907 S.W.2d 454 (Tex. 1995) (although act may have been breach
of contract, "it hardly constitutes conduct that is beyond the bounds of decency" and cannot be
regarded as "utterly intolerable").

 Finally, Partners' failure to return Baird's phone calls is not, as a matter of law,
conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible
bounds of decency, and is to be regarded as atrocious, and utterly intolerable in a civilized
community." Twyman, 855 S.W.2d at 621.

 We hold that each of Partners' alleged acts in causing Baird severe emotional
distress does not, as a matter of law, constitute extreme and outrageous conduct. Because we are
also convinced that the combination of these acts does not rise to an actionable level, we overrule
Baird's second issue.


CONCLUSION

 Having overruled all of appellants' issues, we affirm the district-court judgment.



 

 Lee Yeakel, Justice

Before Justices Jones, Yeakel and Patterson

Affirmed

Filed: October 12, 2000

Do Not Publish


1. Partners also sued J & P Services, Inc. Partners states in an amended pleading that it
dismissed its action against J & P. J & P is not a party to this appeal.
2. McDonald and George Shepherd were named as third-party defendants in an amended
counterclaim filed by Baird and Baird Oil. Shepherd, described as a co-owner of Stanton Mineral
Development, Inc., was dropped as a third-party defendant in a subsequent pleading and is not a
party to this appeal.
3. Baird Oil also appeals, but error is assigned only to claims personal to Baird, a point
recognized by Baird Oil at oral argument. We will thus affirm the district-court judgment as to
Baird Oil without further discussion. See Tex. R. App. P. 47.1.
4. In a supplemental petition, Partners named all of the Baird family lessors as defendants. 
In an amended pleading, Hertha Baird Kennedy and Goar William Baird were dropped as
defendants and are not parties to this appeal.
5. The Partners-to-Baird assignment was signed April 28 to be effective May 1.
6. For convenience, we have substituted "Baird" for "Lessor" in the quoted version of the
Lease's indemnification provision. In the Lease, Lessor includes Goar William Baird and Hertha
Baird Kennedy, who are not parties to this appeal.
7. See Portland Gasoline Co. v. Superior Mktg. Co., 243 S.W.2d 823, 824 (Tex. 1951),
overruled on other grounds, Northern Natural Gas Co. v. Conoco, Inc., 986 S.W.2d 603 (Tex.
1998).
8. See id.; Light v. Centel Cellular Co., 883 S.W.2d 642, 645 (Tex. 1994).
9. See Mitchell's, Inc. v. Friedman, 303 S.W.2d 775, 777-78 (Tex. 1957), overruled on other
grounds, Ethyl Corp. v. Daniel Constr. Co., 725 S.W.2d 705 (Tex. 1987).
10. See Republic Nat'l Bank v. Northwest Nat'l Bank, 578 S.W.2d 109, 115 (Tex. 1979).
11. McDonald averred in an affidavit in support of the second motion for summary judgment
by Partners and McDonald that Stanton had acquired an interest in the original oil and gas lease
from the Bairds to Baird Oil and that effective March 1, 1997, Stanton assigned all of its interest
in that lease to Partners. He attached to his affidavit the assignment, which purported to have been
signed on March 26, 1997 and effective March 1, 1997. The notary stamp reflected this signature
date. The assignment references a second document by volume and page number in the Real
Property Records in Lee County. However, this second document was not filed until April 10,
1997. Thus, it was not possible for anyone to have known the volume and page number of the
second document on March 26, 1997. Baird asserts that the assignment is thus false and a fraud
on the court, the Lee County clerk, and Baird. The district court found that McDonald was in
contempt of court for violation of rule 166a(h) of the rules of civil procedure and awarded Baird
attorney's fees. See Tex. R. Civ. P. 166a(h).
12. Baird refers to McDonald's deposition testimony where McDonald stated that Baird should
be punished with punitive damages for "stealing and selling the pumping unit, interfering with our
business relationships, both purchasers and regulatory--being the Railroad Commission--causing
need to spend great amounts of time dealing with this issue beyond what has already been dealt
with."


contract, "it hardly constitutes conduct that is beyond the bounds of decency" and cannot be
regarded as "utterly intolerable").

 Finally, Partners' failure to return Baird's phone calls is not, as a matter of law,
conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible
bounds of decency, and is to be regarded as atrocious, and utterly intolerable in a civilized
community." Twyman, 855 S.W.2d at 621.

 We hold that each of Partners' alleged acts in causing Baird severe emotional
distress does not, as a matter of law, constitute extreme and outrageous conduct. Because we are
also convinced that the combination of these acts does not rise